# EXHIBIT A

## Case Information

DC-17-00505 | KAREN LENHARD, et al vs. ALLSTATE FIRE & CASUALTY INSURANCE COMPANY

| Case Number | Court | File Date |
|---|---|---|
| DC-17-00505 | 95th District Court | 01/13/2017 |
| Case Type | Case Status | |
| CNTR CNSMR COM DEBT | OPEN | |

## Party

PLAINTIFF
LENHARD, KAREN

Address
10406 Broadmoor Lane
Rowlett TX 75089

Active Attorneys ▾
Lead Attorney
SEID, KELLEY A
Retained

Work Phone
713-334-6121

Fax Phone
713-322-5953

PLAINTIFF
LENHARD, JOHN M

Address
10406 Broadmoor Lane
Rowlett TX 75089

Active Attorneys ▾
Lead Attorney
SEID, KELLEY A
Retained

Work Phone
713-334-6121

Fax Phone

713-322-5953

DEFENDANT
ALLSTATE FIRE & CASUALTY INSURANCE COMPANY

Address
BY SERVING REGISTERED AGENT CT CORPORATION SYSTEM
1999 BRYAN STREET SUITE 900
DALLAS TX 75201

## Events and Hearings

01/13/2017 NEW CASE FILED (OCA) - CIVIL

01/13/2017 ORIGINAL PETITION ▼

2017-01-13 POP(Client ID - 232).pdf

01/13/2017 REQUEST FOR SERVICE ▼

CPR-KS.pdf

01/13/2017 CASE FILING COVER SHEET ▼

InfoSheet - KS.pdf

01/13/2017 ISSUE CITATION ▼

ISSUE CITATION

01/13/2017 JURY DEMAND

01/18/2017 CITATION ▼

Anticipated Server

CERTIFIED MAIL

Anticipated Method
Actual Server
CERTIFIED MAIL

Returned
01/31/2017
Comment
CERT MAIL/GR 9214 8901 0661 5400 0101 2863 23

01/20/2017 NOTE - ADMINISTRATOR ▾

    Comment
    Set for initial dismissal: March 16, 2017. Notice faxed to counsel.

01/31/2017 RETURN OF SERVICE ▾

ALLSTATE

    Comment
    CIT EXEC 1/23/17 CERT MAIL

03/16/2017 DISMISSAL FOR WANT OF PROSECUTION ▾

Judicial Officer
MOLBERG, KEN

Hearing Time
9:00 AM

## Financial

LENHARD, KAREN
      Total Financial Assessment               $435.00
      Total Payments and Credits              $435.00

| 1/17/2017 | Transaction Assessment | | | $435.00 |
| 1/17/2017 | CREDIT CARD - TEXFILE (DC) | Receipt # 2954-2017-DCLK | LENHARD, KAREN | ($435.00) |

## Documents

2017-01-13 POP(Client ID - 232).pdf

CPR-KS.pdf

InfoSheet - KS.pdf

ISSUE CITATION

ALLSTATE

1-CIT CERT MAIL

FILED
DALLAS COUNTY
1/13/2017 4:30:38 PM
FELICIA PITRE
DISTRICT CLERK

Tonya Pointer

CAUSE NO. DC-17-00505 _____

| | | |
|---|---|---|
| **KAREN AND JOHN M. LENHARD** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **V.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **ALLSTATE FIRE & CASUALTY** | § | |
| **INSURANCE COMPANY** | § | _____ **JUDICIAL DISTRICT** |
| *Defendant* | § | |

## PLAINTIFF KAREN AND JOHN M. LENHARD'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Karen and John M. Lenhard, (hereinafter referred to as "Plaintiffs"), complaining

of Allstate Fire & Casualty Insurance Company, (hereinafter referred to as "Defendant") and for cause of

action would respectfully show unto this Honorable Court and Jury as follows:

### DISCOVERY CONTROL PLAN

1. Plaintiffs intend for discovery to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3 and

   affirmatively pleads that this suit is not governed by the expedited-actions process of Texas Rule of Civil

   Procedure 169 because Plaintiff seeks monetary relief of over $100,000.00.

### PARTIES

2. Plaintiffs are individuals residing in Dallas County, Texas.

3. Defendant is a foreign insurance company engaging in the business of insurance in the State of Texas.

   Defendant may be served with process by serving its registered agent of service, C T Corporation System,

   located at the following address: 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

---

## JURISDICTION

4.  The Court has jurisdiction over this cause of action because the amount in controversy is within the jurisdictional limits of the Court.

5.  The Court has jurisdiction over Defendant because Defendant is a foreign insurance company that engages in the business of insurance in the State of Texas and Plaintiffs' causes of action arise out of Defendant's business activities in the State of Texas. Specifically, Defendant sought out and marketed for insurance in Texas and has "purposefully availed" itself of the privilege of conducting activities in Texas. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 660-61 (Tex. 2010).

## VENUE

6.  Venue is proper in Dallas County, Texas, because the Property is situated in Dallas County, Texas. TEX. CIV. PRAC. & REM. CODE §15.032.

## FACTS

7.  Plaintiffs purchased a policy from Defendant Allstate Fire & Casualty Insurance Company, (hereinafter referred to as "the Policy"), which was in effect at the time of loss.

8.  The Policy was purchased to insure Plaintiffs' property, (hereinafter referred to as "the Property"), which is located at 10406 Broadmoor Lane, Rowlett, Texas 75089.

9.  Defendant and/or its agent sold the Policy insuring the Property to Plaintiffs.

10. Plaintiffs are "consumers" as defined under the Texas Deceptive Trade Practices Act ("DTPA") because they are individuals who sought or acquired by purchase or lease, goods or services, for commercial, personal or household use.

11. On or about April 11, 2016, Plaintiffs experienced a severe weather related event which caused substantial hail and wind damage to the Property and surrounding homes and businesses in the area. The Property's damage constitutes a covered loss under the Policy issued by Defendant. Plaintiffs subsequently opened a claim on or around April 12, 2016, and Defendant acknowledged the reported claim on or around April 16, 2016. and Defendant assigned an adjuster to adjust the claim. On April 21, 2016 and April 26, 2016, Defendant's assigned adjuster inspected the Property. Although two inspections have been conducted, Defendant has only produced one estimate from the April 26th inspection date.

12. Defendant's assigned adjuster wrongfully and intentionally estimated the damage in order to refuse issuing a payment. Specifically, Defendant's assigned adjuster estimated the replacement cost of the Property to be $3,456.79, less depreciation in the amount of $245.46 and the deductible in the amount of $8,343.00. Defendant's assigned adjuster estimated for the removal of 6 composition roof shingles and the replacement of 12 composition roof shingles, the removal and replacement of rain caps, and priming and painting 4 roof vents. With respect to the front, left, and right elevations, Defendant's assigned adjuster estimated for the removal and replacement of gutters and downspouts, as well as window screens and reglazing of the double-paned windows. Specifically for the right elevation, Defendant's assigned adjuster estimated for combing and straightening air conditioner condenser fins with and without trip charges. On or around May 23, 2016, via letter, Defendant represented to Plaintiffs that it would not be issuing a payment because the estimated cost of repairs did not exceed the deductible. Defendant intentionally and wrongfully underpaid Plaintiffs' claim and refused to issue a full and fair payment for the covered loss as was rightfully owed under the Policy.

13. Defendant's estimate did not allow for adequate funds to cover the cost of repairs and therefore grossly undervalued all of the damages sustained to the Property. As a result of Defendant's conduct, Plaintiffs' claim was intentionally and knowingly underpaid.

14. Defendant's inadequate settlement offer forced Plaintiffs to retain their own public adjuster to properly evaluate the damage to the Property. On or around September 19, 2016, Plaintiffs' public adjuster inspected the Property. Plaintiffs' public adjuster estimated the value of the damage to be a total of $63,251.43. Plaintiffs' public adjuster's estimate requires a full roof replacement, including but not limited to removing and replacing the following: approximately 39 squares of composition roofing material; roofing felt; drip edge; step flashing and flashing per R907.5, which requires that existing vent flashing, metal edgings, drain outlets, collars, and metal counterflashing shall not be reinstalled where rusted, damaged, or deteriorated; valley lining per IRC R905.2.8.2. and per the manufacturer's specifications; turtle type roof vents per Building Code R806.2; and furnace vents. Additionally, Plaintiff's public adjuster estimated for asphalt starter, which is required per IRC R905.2.4.1 and per manufacturer's specifications, must meet a minimum wind rating of 90 miles per hour.

15. With respect to the exterior, Plaintiff's public adjuster estimated for the removal and replacement of gutters and downspouts. Plaintiff's public adjuster also estimated for dry ice blasting, an industry practice for cleaning ornamental iron fences, as well as painting and priming the ornamental fence. Additionally, the public adjuster estimated for combing and straightening air conditioner condenser fins, as well as the removal and replacement of the wood door and trim, exterior light fixture, overhead door panels, exterior door slab, window screens, and aluminum windows. Additionally, Plaintiff's public adjuster estimated for

the reglazing of 20 double-pane thermal windows to replace window cartridge because the practice of

beading often releases the seal between panes, breaks the glass, and releases argon and krypton gases.

16. Plaintiffs' public adjuster's estimate not only requires a full roof replacement, but also estimates for a

contractor's compliance with the Occupational Safety and Health Administration ("OSHA"). OSHA

dictates, when working on buildings with "unprotected sides and edges" that "each employee on a

walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet

(1.8m) or more above a lower level **SHALL** be protected from falling by the use of guardrail systems,

safety net systems, or personal fall arrest systems."   Occupational Safety and Health Act of 1970 §

1926.501(b)(1) (emphasis added).  This protection was intentionally not included or reflected within the

scope of work provided by Defendant for Plaintiffs' damages to the Property as an attempt to further deny

Plaintiffs benefits owed under the Policy.

17. Defendant made numerous errors in estimating the value of Plaintiffs' claim, as exhibited by its assigned

adjuster's method of investigation and estimation of Plaintiffs' loss, all of which were designed to

intentionally minimize and underpay the loss incurred by Plaintiffs. Specifically, Defendant claimed that

the majority of damage was due to "foot traffic," not a wind or hailstorm occurring on or around April 11,

2016. Defendant's assigned adjuster failed to fully quantify Plaintiffs' covered losses, thus demonstrating

that Defendant's assigned adjuster did not conduct a thorough investigation of Plaintiff's claim and/or

intentionally adjusted Plaintiffs' claim improperly.

18. On or around September 22, 2016, Defendant acknowledged receipt of Plaintiffs' public adjuster's

estimate. However, Defendant wrongfully and intentionally refused to issue any additional payments.

Defendant wrongfully maintained that the two inspections revealed sudden and accidental storm related damaged that was addressed in its estimate for roof, gutter, and window repairs. In review of the claim, Defendant represented that other damage was due to manufacturer defects, matting blisters, and possible mechanical damage, despite objective evidence of functional hail damage produced by Plaintiff's public adjuster.

19. Defendant's unreasonable conduct and failure to make any payments forced Plaintiffs to hire the legal services of McClenny Moseley & Associates, PLLC. In a denial letter dated November 21, 2016, Defendant admitted it observed hail damage to 15 window screens, downspouts, an exterior door, gutters, vent covers, and roof shingles. It also admitted that two windows were broken as a result of the storm on or around April 11, 2016. Yet, Defendant continued to allege that the damage was less than the $8,343.00 deductible and did not issue payment. Defendant and its assigned adjuster wrongfully adjusted Plaintiffs' claim such that it was below the deductible.

20. Despite complying with the proof of loss requirement by submitting their public adjuster's estimate, Plaintiff submitted a signed a notarized proof of loss. Defendant's responded by sending a copy of its September 22nd letter, in which it denied Plaintiffs' public adjuster's estimate.

21. Defendant's assigned adjuster acted as an authorized agent of Defendant. Defendant's assigned adjuster acted within the course and scope of his/her authority as authorized by Defendant. Plaintiffs relied on Defendant and its assigned adjuster to properly adjust the claim regarding the Property and to be issued payment to fix such damage, which did not happen and has not been rectified to date.

22. Defendant failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, Defendant refused to pay the full proceeds owed under the Policy. Due demand was made by Plaintiffs for proceeds to be in an amount sufficient to cover the damaged Property.

23. Defendant and/or Defendant's assigned agent sold the Policy to Plaintiffs, making various statements and representations to Plaintiff that the Property would be covered. Relying on the promises and representations made by Defendant and/or Defendant's assigned agent, Plaintiffs filed a claim under the Policy with the belief that the Property would be covered after a severe weather event such as the one that damaged the Property.

24. All conditions precedent to recovery under the Policy had, and have, been carried out and accomplished by Plaintiffs.

25. As a result of Defendant's wrongful acts and omissions, Plaintiffs were forced to retain the professional services of McClenny Moseley & Associates, PLLC, who is representing Plaintiffs with respect to these causes of action.

## AGENCY

26. Plaintiffs hereby incorporate by reference all facts and circumstances set forth under the foregoing paragraphs.

27. All acts by Defendant were undertaken and completed by its officers, agents, servants, employees, and/or representatives. All such acts were either done with the full authorization or ratification of Defendant and/or were completed in its normal and routine course and scope of employment.

28. Defendant and Defendant's assigned adjuster's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a). All violations under this subsection are made actionable by TEX. INS. CODE § 541.151.

29. Defendant is liable for the unfair and deceptive acts of its assigned adjuster, Mr. Weiss, because he meets the definition of a "person" as defined by the Texas Insurance Code. The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or inter insurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE § 541.002(2) (emphasis added); *see also Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.* 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a person for the purpose of bringing a cause of action against them under the Texas Insurance Code and subjecting them to individual liability).

## NEGLIGENCE

30. Plaintiffs hereby incorporate by reference all facts and circumstances set forth under the foregoing paragraphs.

31. Plaintiffs entrusted Defendant to properly adjust Plaintiffs' insurance claim for the Property damage. Defendant did not properly adjust the claim and misinformed Plaintiffs of the severity of the Property damage. Defendant had and owed a duty to ensure that the Property damage was properly adjusted. Nevertheless, Defendant failed to ensure that Plaintiffs' damage was properly adjusted. This failure is a clear breach of Defendant's duty, and as a result, Plaintiff suffered significant injuries.

32. Defendant and its assigned adjuster had and owed a legal duty to Plaintiff to properly adjust all losses associated with the Property. Defendant, individually and through its assigned adjuster, breached this duty in a number of ways, including, but not limited to, the following:

    A. Defendant, individually and through its assigned adjuster, Mr. Weiss, was to exercise due care in adjusting and paying policy proceeds regarding the Property;

    B. Defendant, individually and through its assigned adjuster, Mr. Weiss, had a duty to competently and completely handle and pay all covered losses associated with the Property;

    C. Defendant, individually and through its assigned adjuster, Mr. Weiss, failed to properly complete all adjusting activities associated with Plaintiffs' damages; and,

    D. Defendant's acts, omissions, and/or breaches, individually and through its assigned adjuster, did great damage to Plaintiffs, and were a proximate cause of Plaintiffs' damages.

## **BREACH OF CONTRACT**

33. Plaintiffs hereby incorporate by reference all facts and circumstances set forth under the foregoing paragraphs.

34. Defendant's conduct constitutes a breach of the insurance contract made between Defendant and Plaintiff. According to the Policy, which Plaintiffs purchased, Defendant had the absolute duty to investigate Plaintiffs' damages, and pay Plaintiffs Policy benefits for the claims made due to the extensive storm-related damages.

35. As a result of the storm-related event, Plaintiffs suffered extreme weather related damages. Despite objective evidence of weather related damages provided by Plaintiffs, Defendant breached its contractual obligations under the Policy by failing to pay Plaintiffs cost related benefits to properly repair the Property, as well as for related losses associated with the subject loss event. As a result of this breach, Plaintiffs have suffered additional actual and consequential damages.

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

36. Plaintiffs hereby incorporate by reference all facts and circumstances set forth under the foregoing paragraphs.

37. Defendant and/or its assigned adjuster, Mr. Weiss, engaged in false, misleading, or deceptive acts or practices that constitute violations of the Texas Deceptive Trade Practices Act ("DTPA"), which is codified in the Texas Business and Commerce Code ("TEX. BUS. & COM. CODE"), including but not limited to:

    A. Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (TEX. BUS. & COM. CODE § 17.46(b)(12));

    B. Failing to disclose information concerning goods or services which were known at the time of the transaction, and the failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had such information been disclosed (§ 17.46(b)(24));

    C. Using or employing an act or practice in violation of the Texas Insurance Code

(§ 17.50(a)(4));

D.  Unreasonably delaying the investigation, adjustment, settlement offer and prompt resolution of Plaintiffs' claim (TEX. INS. CODE § 541.060(a)(2)-(5));

E.  Failure to properly investigate Plaintiffs' claim (§ 541.060(7)); and/or

F.  Hiring and relying upon a biased adjuster, in this case Defendant's assigned adjuster, Mr. Weiss, to obtain a favorable, results-oriented report, and to assist Defendant in severely underpaying and/or denying Plaintiffs' damage claim (TEX. BUS. & COM. CODE § 17.46(31)).

38. As described in this Original Petition, Defendant represented to Plaintiffs that their Policy and Allstate Fire & Casualty Insurance Company's adjusting and investigative services had characteristics or benefits that it actually did not have, which gives Plaintiffs the right to recover proceeds. § 17.46(b)(5).

39. As described in this Original Petition, Defendant represented to Plaintiffs that their Policy and Allstate Fire & Casualty Insurance Company's adjusting and investigative services were of a particular standard, quality, or grade when they were of another, which stands in violation of § 17.46 (b)(7).

40. By Defendant representing that they would pay the entire amount needed by Plaintiffs to repair the damages caused by the weather related event and then not doing so, Defendant has violated §§ 17.46 (b)(5), (7), (12).

41. Defendant has breached an express warranty that the damage caused by the storm-related event would be covered under Policy. This breach entitles Plaintiff to recover under §§ 17.46 (b) (12), (20); 17.50 (a)(2).

42. Defendant's actions, as described herein, are unconscionable in that Defendant took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. Therefore, Defendant's unconscionable conduct gives Plaintiff the right to relief under § 17.50(a)(3).

43. Defendant's conduct, acts, omissions, and failures, as described in this Original Petition, are unfair practices in the business of insurance and are in violation of § 17.50 (a)(4).

44. Plaintiffs are consumers, as defined under the DTPA, and relied upon these false, misleading, and/or deceptive acts and/or practices, made by Defendant, to their detriment. As a direct and proximate result of Defendant's collective acts and conduct, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiffs now sue. All of the aforementioned acts, omissions, and failures of Defendant are a producing cause of Plaintiffs' damages which are described in this Original Petition.

45. Because Defendant's collective actions and conduct were committed knowingly and intentionally, in addition to all damages described herein, Plaintiffs are entitled to recover mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages. § 17.50(b)(1).

46. As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct, Plaintiffs have been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on his behalf. Accordingly, Plaintiffs also seek to recover his costs and reasonable and necessary attorneys' fees as permitted under § 17.50(d), as well as any other such damages to which Plaintiffs may show themselves to be justly entitled by law and in equity.

---

## VIOLATIONS OF THE TEXAS INSURANCE CODE

47. Plaintiffs hereby incorporate by reference all facts and circumstances set forth within the foregoing paragraphs.

48. Defendant and/or its assigned adjuster's actions constitute violations of the Texas Insurance Code ("TEX. INS. CODE"), Chapters 541 and 542, including but not limited to:

    A.  Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage at issue (TEX. INS. CODE § 541.060(a)(1));

    B.  Failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear (§ 541.060(a)(2)(A));

    C.  Failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim (§ 541.060(a)(3));

    D.  Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time and failing within a reasonable time to submit a reservation of rights letter to Plaintiff (§ 541.060(a)(4));

    E.  Refusing, failing, or unreasonably delaying a settlement offer on the basis that other coverage is available (§ 541.060(a)(5));

    F.  Refusing, to pay a claim without conducting a reasonable investigation with respect to the claim (§ 541.060(a)(7));

G.  Forcing Plaintiffs to file suit to recover amounts due under the policy by refusing to pay all benefits due (§ 542.003(b)(5));

H.  Misrepresenting an insurance policy by failing to disclose any matter required by law to be disclosed, including a failure to make such disclosure in accordance with another provision of this code (§ 541.061(5));

I.  Engaging in false, misleading, and deceptive acts or practices under the DTPA (§ 541.151(2));

J.  Failing to acknowledge receipt of the claim, commence any investigation of the claim, and request from the claimant all items, statements, and forms the insurer reasonably believes at that time will be required from the claimant no later than the 15th day after the receipt of notice of the claim (§ 542.055);

K.  Failing to notify the claimant in writing of the acceptance or rejection of a claim no later than the 15th business day after the insurer receives all items, statements, and forms required by the insurer to secure a final proof of loss (§ 542.056(a));

L.  Failing to state the reasons for rejection (§ 542.056(c));

M.  Failing to notify the claimant of the reasons that the insurer needs 45 days in additional time to accept or reject the claim (§ 542.056(d));

N.  Failing to pay a claim not later than the 5th business day after the date of notice of acceptance was made (§ 542.057); and/or

O. Failing to pay a valid claim after receiving all reasonably requested and required items from the insured. (§ 542.058(a)).

49. By its acts, omissions, failures and conduct, Defendant has engaged in unfair and deceptive acts and practices in the business of insurance. Plaintiffs, the insured and beneficiaries, have a valid claim as a result of their detrimental reliance upon Defendant's unfair or deceptive acts or practices. § 541.151(2).

50. Defendant's aforementioned conduct compelled Plaintiffs to initiate this lawsuit to recover amounts due under the Policy, by offering substantially less than the amount ultimately recovered. Defendant refused to offer more than the grossly undervalued estimates prepared by Defendant and/or Defendant's assigned adjuster, despite knowing the actual damages were much greater than what was offered. Defendant's continued refusal to offer compelled Plaintiffs to file suit. § 542.003(5).

51. Since a violation of the Texas Insurance Code is a direct violation of the DTPA, and because Defendant's actions and conduct were committed knowingly and intentionally, Plaintiffs are entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times the amount of actual damages, for Defendant having knowingly, intentionally and/or negligently committed said actions and conduct. § 541.152.

52. As a result of Defendant's unfair and deceptive actions and conduct, Plaintiffs have been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on their behalf. Accordingly, Plaintiffs also seek to recover their costs and reasonable and necessary attorney's fees as permitted under TEX. BUS. & COM. CODE § 17.50(d) or TEX. INS. CODE § 541.152 and any other such damages to which Plaintiff may show themselves justly entitled by law and in equity.

## BREACH OF THE COMMON LAW DUTY
## OF GOOD FAITH & FAIR DEALING

53. Plaintiffs hereby incorporate by reference all facts and circumstances in the foregoing paragraphs.

54. From and after the time Plaintiffs' claim was presented to Defendant, the liability of Defendant to pay the

full claim in accordance with the terms of the Policy was more than reasonably clear. However, Defendant

has refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable

insurance company would have relied on to deny full payment. Defendant's conduct constitutes a breach

of the common law duty of good faith and fair dealing. *See Viles v. Security National Ins. Co.,* 788 S.W.2d

556, 567 (Tex. 1990) (holding that an insurer has a duty to its insureds to "investigate claims thoroughly

and in good faith" and an insurer can only deny a claim after a thorough investigation shows that there is

a reasonable basis to deny that claim).

55. For the breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to

compensatory damages, including all forms of loss resulting from Defendant's breach of the duty, such

additional costs, economic hardship, losses due to nonpayment of the amount owed to Plaintiffs, and/or

exemplary damages for emotional distress.

## KNOWLEDGE

56. Each of the acts described above, together and singularly, were done "knowingly" and "intentionally," as

the terms are used in the Texas Insurance Code, and were a producing cause of Plaintiffs' damages

described herein.

---

## DAMAGES

57. Plaintiffs will show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

58. For breach of contract, Plaintiffs are entitled to regain the benefit of Plaintiffs' bargain, which is the amount of Plaintiffs' claim, together with attorney's fees.

59. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, court costs and attorney's fees. Because Defendant acted knowingly and intentionally, Plaintiffs ask for three times Plaintiffs' actual damages. TEX. INS. CODE § 541.152.

60. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of Plaintiffs' claim, as well as interest at the rate of eighteen (18) percent interest per year on the amount of Plaintiffs' claim as damages, together with attorney's fees. § 542.060.

61. For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and/or exemplary damages for emotional distress.

62. For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the law firm whose name is subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

63. Defendant's acts have been the producing and/or proximate cause of damage to Plaintiffs, and Plaintiffs seek an amount in excess of the minimum jurisdictional limits of this Court.

64. More specifically, Plaintiffs seek monetary relief, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees, in excess of $200,000.00 but less than $1,000,000.00.

## ADDITIONAL DAMAGES & PENALTIES

65. Defendant's conduct was committed knowingly and intentionally. Accordingly, Defendant is liable for additional damages under the DTPA, TEX. BUS. & COM. CODE § 17.50(b)(1), as well as all operative provisions of the Texas Insurance Code. Plaintiffs are clearly entitled to the 18% damages allowed under TEX. INS. CODE § 542.060.

## ATTORNEY'S FEES

66. In addition, Plaintiffs are entitled to all reasonable and necessary attorneys' fees pursuant to the Texas Insurance Code, DTPA, and TEX. CIV. PRAC. & REM. CODE §§ 38.001-.005.

## COMPEL MEDIATION

67. Pursuant to TEX. INS. CODE § 541.161 and TEX. BUS. & COM. CODE § 17.5051, Plaintiffs request that Defendant be made to mediate no later than the 30th day of the signed order, following the 90th day after the date for which this pleading for relief is served upon Defendant.

## JURY DEMAND

68. Plaintiffs demand a jury trial, consisting of citizens residing in Dallas County, Texas, and tenders the appropriate fee with this Original Petition.

## DISCOVERY

69. Texas Rule of Civil Procedure 47 has been met in this petition. As such, Plaintiffs request that Defendant respond to the Requests for Disclosure, Requests for Production and Interrogatories contained herein:

### I. REQUESTS FOR DISCLOSURE

1. Pursuant to the Texas Rules of Civil Procedure, Plaintiff request that Defendant Allstate Fire & Casualty Insurance Company, disclose all information and/or material as required by Rule 194.2, paragraphs (a) through (l), and to do so within 50 days of this request.

### II. REQUESTS FOR PRODUCTION

1. Please produce Allstate Fire & Casualty Insurance Company's complete claim files from the home, regional and local offices, as well as third party adjusters/adjusting firms regarding the subject claim, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file for the premises relating to or arising out of Plaintiffs' underlying claim.

2. Please produce the underwriting files referring or relating in any way to the policy at issue in this action, including the file folders in which the underwriting documents are kept and drafts of all documents in the file.

3. Please produce a certified copy of the insurance policy pertaining to the claim made subject of this lawsuit, including all underwriting files and insurance applications sent on behalf of Plaintiff in his attempt to secure insurance on the Property, which is the subject of this suit.

4. Please produce the electronic diary, including the electronic and paper notes made by Allstate Fire & Casualty Insurance Company's claims personnel, contractors, and third party adjusters/adjusting firms relating to the Plaintiffs' claim.

5.  Please produce all emails and other forms of communication by and between all parties in this matter relating to the underlying event, claim or the Property, which is the subject of this suit.

6.  Please produce the adjusting reports, estimates and appraisals prepared concerning Plaintiffs' underlying claim.

7.  Please produce the field notes, measurements and file maintained by the adjuster(s) and engineers who physically inspected the Property, which is the subject of this suit.

8.  Please produce the emails, instant messages and internal correspondence pertaining to Plaintiffs' underlying claim.

9.  Please produce the videotapes, photographs and recordings of Plaintiff or Plaintiffs' home, regardless of whether Allstate Fire & Casualty Insurance Company intends to offer these items into evidence at trial.

10. Please produce all communications, correspondence, documents and emails between any and all assigned adjusters and/or agents and the Plaintiff, not limited to physical or audio recordings of all conversations between Plaintiff and any and all assigned adjusters and/or agents.

11. Please produce all audio recordings or transcripts of conversations, calls, text, email or any other data sent to and from Plaintiff by any and all assigned adjusters and/or agents after their letter of representation sent by counsel.

12. Please provide copies of all marketing material sent on behalf of Allstate Fire & Casualty Insurance Company and/or its agents after the date of loss of the Property, which is the subject of this suit.

13. Please provide all correspondence between Allstate Fire & Casualty Insurance Company and its assigned adjuster, and all correspondence between Allstate Fire & Casualty Insurance Company and its assigned agents, after the date of loss of the Property, which is the subject of this suit.

## III. INTERROGATORIES

1. Please identify any person Allstate Fire & Casualty Insurance Company expects to call to testify at the time of trial.

2. Please identify the persons involved in the investigation and handling of Plaintiffs' claim for insurance benefits arising from damage relating to the underlying event, claim or the Property, which is the subject of this suit, and include a brief description of the involvement of each person identified, their employer, and the date(s) of such involvement.

3. If Allstate Fire & Casualty Insurance Company or Allstate Fire & Casualty Insurance Company's representatives performed any investigative steps in addition to what is reflected in the claims file, please generally describe those investigative steps conducted by Allstate Fire & Casualty Insurance Company or any of Allstate Fire & Casualty Insurance Company's representatives with respect to the facts surrounding the circumstances of the subject loss. Identify the persons involved in each step.

4. Please identify by date, author, and result the estimates, appraisals, engineering, mold and other reports generated as a result of Allstate Fire & Casualty Insurance Company's investigation.

5. Please state the following concerning notice of claim and timing of payment:

   a. The date and manner in which Allstate Fire & Casualty Insurance Company received notice of the claim;

b.     The date and manner in which Allstate Fire & Casualty Insurance Company acknowledged

receipt of the claim;

c.     The date and manner in which Allstate Fire & Casualty Insurance Company commenced

investigation of the claim;

d.     The date and manner in which Allstate Fire & Casualty Insurance Company requested from

the claimant all items, statements, and forms that Allstate Fire & Casualty Insurance

Company reasonably believed, at the time, would be required from the claimant pursuant to

the investigation; and

e.     The date and manner in which Allstate Fire & Casualty Insurance Company notified the

claimant in writing of the acceptance or rejection of the claim.

6.  Please identify by date, amount and reason, the insurance proceeds payments made by Defendant, or

on Defendant's behalf, to the Plaintiff.

7.  Has Plaintiffs' claim for insurance benefits been rejected or denied? If so, state the reasons for

rejecting/denying the claim.

8.  When was the date Allstate Fire & Casualty Insurance Company anticipated litigation?

9.  Have any documents (including those maintained electronically) relating to the investigation or

handling of Plaintiffs' claim for insurance benefits been destroyed or disposed of? If so, please

identify what, when and why the document was destroyed, and describe Allstate Fire & Casualty

Insurance Company's document retention policy.

10. Does Allstate Fire & Casualty Insurance Company contend that the insured's premises were damaged by storm-related events and/or any excluded peril? If so, state the general factual basis for this contention.

11. Does Allstate Fire & Casualty Insurance Company contend that any act or omission by the Plaintiff voided, nullified, waived or breached the insurance policy in any way? If so, state the general factual basis for this contention.

12. Does Allstate Fire & Casualty Insurance Company contend that the Plaintiff failed to satisfy any condition precedent or covenant of the Policy in any way? If so, state the general factual basis for this contention.

13. How is the performance of the adjuster(s) involved in handling Plaintiffs' claim evaluated? State what performance measures are used and describe Allstate Fire & Casualty Insurance Company's bonus or incentive plan for adjusters.

## CONCLUSION

70. Plaintiffs pray that judgment be entered against Defendant Allstate Fire & Casualty Insurance Company and that Plaintiffs be awarded all of their actual damages, consequential damages, prejudgment interest, additional statutory damages, post judgment interest, reasonable and necessary attorney's fees, court costs and for all such other relief, general or specific, in law or in equity, whether pled or un-pled within this Original Petition.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray they be awarded all such relief to which they is due as a result of the acts of Defendant Allstate Fire & Casualty Insurance Company, and for all such other relief to which Plaintiffs may be justly and rightfully entitled. In addition, Plaintiffs request the award of treble damages under the Texas Deceptive Trade Practices Act and the Texas Insurance Code, attorney's fees for the trial and any appeal of this lawsuit, for all costs of court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

RESPECTFULLY SUBMITTED,

*/s/ Kelley A. Seid*
**McCLENNY MOSELEY & ASSOCIATES, PLLC**
James M. McClenny
State Bar No. 24091857
J. Zachary Moseley
State Bar No. 24092863
Kelley A. Seid
State Bar No. 24102480
411 N. Sam Houston Parkway E., Suite 200
Houston, Texas 77060
Principal Office No. 713-334-6121
Facsimile: 713-322-5953
James@mma-pllc.com
Zach@mma-pllc.com
Kelley@mma-pllc.com
**ATTORNEYS FOR PLAINTIFF**

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To:**

**ALLSTATE FIRE & CASUALTY INSURANCE COMPANY**
**BY SERVING REGISTERED AGENT CT CORPORATION SYSTEM**
**1999 BRYAN STREET SUITE 900**
**DALLAS TX 75201**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **95th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **KAREN AND JOHN M. LENHARD**

Filed in said Court **13th day of January, 2017** against

**ALLSTATE FIRE & CASUALTY INSURANCE COMPANY**

For Suit, said suit being numbered **DC-17-00505,** the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition**REQUEST FOR DISCOVERY, PRODUCTION, AND INTERROGATORIES,** a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 18th day of January, 2017.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By _Gabriel Rincon_ , Deputy
GABRIEL RINCON

---

**CERT MAIL**

**CITATION**

**DC-17-00505**

**KAREN LENHARD, et al**
**vs.**
**ALLSTATE FIRE & CASUALTY**
**INSURANCE COMPANY**

ISSUED THIS
**18th day of January, 2017**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: GABRIEL RINCON, Deputy

**Attorney for Plaintiff**
KELLEY A SEID
MCCLENNY MOSELEY & ASSOCIATES
PLLC
411 N SAM HOUSTON PARKWAY E
SUITE 200
HOUSTON TX 77060
713-334-6121

**DALLAS COUNTY CONSTABLE**
FEES          FEES NOT
PAID          PAID

**UNITED STATES
POSTAL SERVICE.**

Date: January 30, 2017

MAIL MAIL:

The following is in response to your January 30, 2017 request for delivery information on
your Certified Mail™/RRE item number 9214890106615400101286323. The delivery
record shows that this item was delivered on January 23, 2017 at 8:54 am in DALLAS,
TX 75201. The scanned image of the recipient information is provided below.

Signature of Recipient :   

Address of Recipient :   

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal
representative.

Sincerely,
United States Postal Service

The customer reference information shown below is not validated or endorsed by the
United States Postal Service. It is solely for customer use.

Reference ID: 9214890106615400101286323
DC-17-00505/GR
ALLSTATE FIRE & CASUALTY INSURANCE COMPANY
BY SERVING REGISTERED AGENT CT CORPORATION SYSTEM
1999 Bryan St Ste 900
Dallas, TX 75201-3140

FELICIA PITRE
DISTRICT CLERK
GEORGE L ALLEN SR COURT BLDG
600 COMMERCE ST
DALLAS, TX 75202-4689



9214 8901 0661 5400 0101 2863 23

**RETURN RECEIPT (ELECTRONIC)**

**DC-17-00505/GR**

**ALLSTATE FIRE & CASUALTY INSURANCE COMPANY**
BY SERVING REGISTERED AGENT CT CORPORATION
SYSTEM
1999 BRYAN ST STE 900
**DALLAS, TX 75201-3140**

IMpbCertified8x5Label v2016.09.29.91

**FILED**

**OFFICER'S RETURN**

17 JAN 31  AM 8: 57

FELICIA PITRE
DISTRICT CLERK
DALLAS CO. TEXAS
DEPUTY

Case No. : DC-17-00505

Court No.95th District Court

Style: KAREN LENHARD, et al

vs.

ALLSTATE FIRE & CASUALTY INSURANCE COMPANY

Came to hand on the ___18th___ day of ___January___, 20 _17_, at ___2___ o'clock _P_.M. Executed at _Dallas, TX 75201_ 1999 Bryan St. Ste 900

within the County of _____ at __8:54__ o'clock _A_ .M. on the __23rd__ day of _January_

20 _17_, by delivering to the within named _Allstate Fire & Casualty Insurance Company_

_By Serving Registered Agent CT corporation Service System by US Certified mail_

_Return receipt received, and signed by Illegible Signature_

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by me in serving such process was _____miles and my fees are as follows:  To certify which witness my hand.

For serving Citation      $___76 00___      _Illegible Signature_

For mileage            $_____      of_____County,

For Notary            $_____      By _Gabriel Rincon_____Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____before me this_____day of _____, 20_____,

to certify which witness my hand and seal of office.

**FELICIA PITRE**
**DISTRICT CLERK**
**600 COMMERCE STREET**
**DALLAS, TEXAS 75202-4606**

Notary Public_____County_____